UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHARLES SPRING

VERSUS

SHELL OIL COMPANY, ET AL.

CV. NO. 17-1754-JWD-RLB

JUDGE JOHN W. deGRAVELLES

## RULING AND ORDER

### I. THE PLAINTIFF'S ALLEGATIONS

In this case, Plaintiff Charles Spring sues "Oil Company Defendants" Shell Oil Company; Shell Offshore Inc.; SWEPI, LP; and Chevron USA, Inc. (Doc. 1-1 at 1).

This case concerns radioactive scale "co-produced during oil and gas production" that adheres to pipe and other oil production equipment. (*Id.* at 2). When the scale within a pipe builds up enough to slow the flow of oil or gas, oil companies like Defendants send the pipe to a facility to be de-scaled. (*Id.* at 2-3).

Between 1973 and 1983, Plaintiff worked for Shield Coat, Inc., at the French Jordan and Shield Coat Facility ("FJSC facility") in Houma, Louisiana, which performs pipe descaling work. (*Id.* at 2). Plaintiff worked with pipe containing scale, and the FJSC facility's pipe cleaning process pulverized the scale and caused it to become airborne, exposing Plaintiff to dangerous levels of radiation. (*Id.*). The pipe and scale were never marked or otherwise identified as radioactive. (*Id.* at 3). Defendants owned some of the pipes submitted to the FJSC facility, and Defendants' employees were often present to observe the de-scaling of the pipe. (*Id.* at 2-3).

In February 2017, a "lump" was discovered on Plaintiff's thyroid gland, and Plaintiff claims that the lump was caused by radiation exposure. (*Id.* at 5). Plaintiff also claims that he has

an increased risk of cancer and "fear of cancer" and that he has "breathing problems." (*Id.* at 4-5).

Plaintiff alleges, *inter alia*, that Defendants are "strictly liable for all damages caused by [scale], having *garde* of the contaminated pipe and although the pipe may have been temporarily in the control of the pipe cleaning yard, the pipe at all times remained under the custody, control, direction, [and] supervision of [Defendants] and [Defendants] controlled what cleaning processes were to be administered to [Defendants'] pipes and controlled its movement and storage." (*Id.* at 4). Plaintiff's prayer for compensatory damages includes a request for the costs associated with medical monitoring. (*Id.* at 5).

## II. DEFENDANTS' MOTION

The Motion before the Court seeks to partially dismiss this action under Federal Rule of Civil Procedure 12(b)(6). ("Motion," Doc. 12; *see also* Doc. 15 (Chevron's request to adopt portions of Motion), Doc. 17 (Order granting request)). Defendants argue that Plaintiff has failed to state a strict liability claim, as he has not plausibly alleged that: (1) the pipe was defective in and of itself, rather than made dangerous by the temporary presence of a foreign substance; (2) any defect caused Plaintiff's injury, as it was not the presence of scale but the cleaning process used at the FJSC facility that pulverized and aerosolized the scale; and (3) at the time when the pipe was cleaned it was in Defendants' garde, rather than in the garde of a pipe cleaning contractor or Shield Coat. (Doc. 12-1 at 5-9).

Defendants also oppose Plaintiff's request for damages for medical monitoring. (*Id.* at 9). They maintain that such damages are available only when a disease is presently "manifest," and Plaintiff has made only vague and unclear allegations concerning specific medical conditions from which he suffers or his future prognosis. (*Id.* at 9-10). Defendants also argue that Plaintiff has

2

failed to address factors necessary to support a request for medical monitoring damages, including whether an available and adequate monitoring procedure exists; whether the procedure is reasonably necessary; whether the procedure has been prescribed by a qualified physician; the public's level of risk of contracting any particular disease; Plaintiff's comparative risk; and whether there is some demonstrated clinical value of early detection. (*Id.* at 10).

Shell Offshore and SWEPI further claim that they were incorporated and formed in December 1981 and October 1983, respectively, and they cannot be sued for any acts or omissions prior to those dates. (*Id.* at 4-5).

Plaintiff does not oppose Shell Offshore and SWEPI's request to dismiss claims against them arising prior to when they were incorporated and formed. (Doc. 22 at 1-2). Otherwise, Plaintiff opposes the Motion, arguing that he has stated a strict liability claim and claim for medical monitoring under the liberal pleadings standards of Rule 12(b)(6). (*Id.* at 2-5). In reply, Defendants generally contend that Plaintiff's factual allegations in support of his claims are vague and conclusory and are therefore not entitled to a presumption of truth. (Doc. 23 at 1-3).

### III. GENERAL STANDARDS

In *Johnson v. City of Shelby, Miss.,* ––– U.S. ––––, 135 S. Ct. 346 (2014), the Supreme Court analyzed the standards applicable to motions under Rule 12(b)(6), explaining that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading

3

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (emphasis added in *Lormand*)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)]; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth Circuit summarized the standard for a Rule 12(b)(6) motion:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff . . . To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

## IV. ANALYSIS

The parties agree that Plaintiff's claims against Shell Offshore and SWEPI arising prior to their incorporation and formation dates should be dismissed, and the Court accepts this agreement and dismisses these claims. The Court now turns to the contested issues.

### a. Strict Liability

The Louisiana Supreme Court discussed strict liability claims in the following excerpt:

> Under Louisiana law, liability for injuries sustained by one as the result of a defective condition of a thing is based on legal fault, i.e., strict liability. *See* La. Civ.Code art. 2317. Louisiana's codal provision for legal fault is found in La. Civ.Code art. 2317 which provides: We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....
>
> In an action asserting liability under La. Civ.Code art. 2317 before 1996, the plaintiff bore the burden of proving three elements: (1) that the thing which caused the damages was in the care, custody, and control (garde) of the defendant; (2) that the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and (3) that the vice, ruin, or defect was the cause-in-fact of the plaintiff's damages. La. Civ. Code art. 2317; *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106 (La. 1990); *Loescher v. Parr,* 324 So.2d 441 (La. 1975). To recover, plaintiff bears the burden of proving these elements in the affirmative, and the failure on any one is fatal to the case.

*Dupree v. City of New Orleans*, 1999-3651 (La. 8/31/00), 765 So.2d 1002, 1007–08 (formatting altered, footnotes omitted); *see also* 12 La. Civ. L. Treatise, Tort Law § 1:18 (2d ed.) (1996 revisions to article 2317 added scienter requirements, "changing the requirement for liability under the article from strict liability to negligence").

Not every imperfection or irregularity creates an unreasonable risk of injury, and the fact that an accident occurred because of a vice or defect does not elevate the condition of the thing to that of an "unreasonably dangerous defect." *Dupree*, 765 So.2d at 1012-13. In determining whether a thing presents an unreasonable risk of harm, courts consider: "(1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences;

5

(4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved." *Id.* at 1012. Notably, a defect must be "an imperfection or deficiency which inheres with relative permanence in a thing as one of its qualities." *Scarabin v. Shell Pipe Line Corp.*, 1992 WL 176111, at *1 (E.D. La. July 9, 1992) (citing *Toussant v. Guice*, 414 So.2d 850, 852 (La. App. 4th Cir. 1982); *Schexnaider v. State Farm Ins.*, 541 So.2d 223 (La. App. 4th Cir. 1989)).

The person who has custody or garde of a thing "is he who has the legal duty to prevent its vice or defect from harming another," and a thing can be in more than one entity's custody or garde at the same time. *Dupree*, 765 So. 2d at 1009. In evaluating whether a thing is in a defendant's custody or garde, Louisiana courts consider principally "whether the person bears such a relationship as to have the right of direction and control over the thing[,] and . . . what, if any, kind of benefit the person derives from the thing." *Id.*

In *Robertson v. Chevron USA, Inc.*, the Eastern District of Louisiana analyzed claims similar to those presented here:

> Under either the pre-1996 or post-1996 causes of action for strict liability, a defendant is liable for only things in its custody that have a "ruin, vice, or defect." The Oil Company Defendants and the Pipe Contractor Defendants argue the alleged scale is not an imperfection inherent in the pipe itself sufficient to trigger strict liability. The Defendants contend they cannot be held strictly liable because the contaminated pipe scale on the oilfield pipes is merely a temporary condition and thus not a "defect" sufficient to trigger strict liability.
>
> The Court disagrees. The radiation at issue in this case is absorbed into the pipe, which Plaintiffs assert renders the pipe permanently defective. Thus, the radioactive quality of the pipes containing NORM is not a mere temporary hazard that would preclude the applicability of strict liability.
>
> Defendants also argue Plaintiffs fail to allege the vice or defect in the pipes was the cause-in-fact of their injuries. Instead, Defendants argue, Plaintiffs allege their injuries were caused by pipe-cleaning operations conducted on the property. Defendants contend Plaintiffs' claim of strict liability should be dismissed because

it was the pipe-cleaning operations—not any inherent defect in the pipes—that caused their injuries.

Plaintiffs' petition alleges the "scale on the pipe delivered to the Property was contaminated with ... TERM, and other hazardous ... compounds that are known to pose a serious health risk to humans." Plaintiffs also allege the radioactive material "will remain in the properties of the Petitioners, and continue[ ] to emit harmful radiation, damaging Petitioner's [sic] properties and causing ... health problems." Plaintiffs further allege "[a]s a result of their long-term exposures ... the Petitioners are at risk for contracting diseases, including cancers and forms of leukemia." Finally, Plaintiffs allege the "acts and/or omissions of the [Defendants] are a substantial contributing cause of the Petitioners' injuries and damages." The Court finds this sufficient to allege the pipe scale caused Plaintiffs' physical injuries and property damage.

Defendants further argue Plaintiffs failed to allege that any Oil Company Defendant had *garde* of the pipe when the alleged harm occurred. Conoco argues it cannot be held strictly liable because "several entities, including the Pipe Contractors, accepted the pipe and asserted custody and control ("garde") over it." [. . .]

In this case, Plaintiffs allege "the Oil Companies delivered to the Pipe Contractors at the Property used oil field pipe that was to be cleaned and inspected" and "[a]t all relevant times, the Oil Companies retained ownership of the pipe, and retained the right to supervise and control the Pipe Contractors' cleaning work." Plaintiffs further allege the "scale on the pipe delivered [to the Pipe Contractor Defendants] ... was contaminated with [TERM]." Because Plaintiffs allege the Oil Company Defendants "retained ownership of the pipe" and the Pipe Contractor Defendants had care, custody, or control of the pipes, the Court finds the Plaintiffs allege sufficient facts to establish the Oil Company Defendants and Pipe Contractor Defendants had custody or control of the pipes for the purposes of strict liability. Accordingly, Plaintiffs adequately state a claim for strict liability under Louisiana Civil Code article 2317 as to claims arising before 1996.

*Robertson v. Chevron USA, Inc.*, 2017 WL 679406, at *4-5 (E.D. La. Feb. 21, 2017).

For many of the same reasons set forth in *Robertson*, Plaintiff has adequately alleged a strict liability claim. Defendants contend that scale is a foreign substance present only temporarily and not inherent in Defendants' pipes. (Doc. 12-1 at 5-6). However, Plaintiff has claimed that scale adheres to pipes and is present until the pipes are industrially descaled. (Doc. 1-1 at 2-3). At this early stage, Plaintiff has adequately alleged that scale is a condition that inheres with *relative* permanence in Defendants' pipes. *See Scarabin*, 1992 WL 176111, at *1; *see also*

7

*Coleman v. H.C. Price Co.*, 2014 WL 4354443, at *6 (E.D. La. Sept. 2, 2014) (rejecting argument that radioactive contamination of pipe was "merely a temporary condition").

Defendant's argument concerning causation is similarly unavailing. The Petition for Damages appears to allow that the cleaning of the pipes was an additional or alternative cause-in-fact of Plaintiff's injuries, but it also reasonably permits the conclusion that the "vice, ruin, or defect" complained of was a cause-in-fact of Plaintiff's injuries. *Robertson*, 2017 WL 679406, at *5. Similarly, although the Petition appears to allow that other entities may have had garde over contaminated pipe, it also reasonably permits the conclusion that Defendants retained rights of "direction and control" over the pipe (and the cleaning process) at relevant times. *Id.*; *see Dupree*, 765 So.2d at 1009 (object can be in garde of two entities at the same time).

For the foregoing reasons, Defendants' request to dismiss Plaintiff's strict liability claim is denied.

### b. Medical Monitoring

The Eastern District of Louisiana has summarized the standards applicable to medical monitoring claims:

> In *Bourgeois I,* the Louisiana Supreme Court held that medical monitoring costs are compensable damages under Louisiana Civil Code article 2315, provided that the plaintiff satisfies seven criteria. *Bourgeois v. A.P. Green Indus., Inc.,* 716 So.2d 355, 360 (La.1998) ("*Bourgeois I* "). These criteria are: (1) a significant exposure to a proven hazardous substance; (2) as a proximate result of this exposure, plaintiff suffers a significant increased risk of contracting a serious latent disease; (3) plaintiff's risk of contracting a serious latent disease is greater than (a) the risk of contracting the same disease had he or she not been exposed and (b) the chances of members of the public at large of developing the disease; (4) a monitoring procedure exists that makes the early detection of the disease possible; (5) the monitoring procedure has been prescribed by a qualified physician and is reasonably necessary according to contemporary scientific principles; (6) the prescribed monitoring regime is different from that typically recommended in the absence of exposure; and (7) there is some demonstrated clinical value in the early detection and diagnosis of the disease. *Bourgeois I,* 716 So.2d at 360–61.

> In the wake of this decision, the Louisiana Legislature, through Act 989 of 1999, amended article 2315 to exclude future medical monitoring from the statute's definition of compensable damages. La. Civ. Code. art. 2315(B) ( "Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease."); *see also Bonnette v. Conoco, Inc.,* 837 So.2d 1219, 1230, n.6 (La.2003) (explaining that "the amendment effectively eliminated medical monitoring as a compensable item of damage in the absence of a manifest physical or mental injury or disease."). The amended version of the statute became effective on July 9, 1999.
>
> Then, in *Bourgeois II,* the Louisiana Supreme Court held that Act 989 could not apply retroactively to divest a cause of action that accrued before the effective date of the Act. *Bourgeois v. A.P. Green Indus., Inc.,* 783 So.2d 1251, 1260 (La.2001) (*Bourgeois II*). Accordingly, to state a claim for medical monitoring damages following the amendment to article 2315 and the Louisiana Supreme Court's decision in *Bourgeois II,* a plaintiff must either (1) satisfy Louisiana Civil Code article 2315(B) which requires that the monitoring relate to a manifest physical or mental injury or disease; or (2) demonstrate that the seven factors forming the *Bourgeois I* test converged before July 9, 1999. *See* La. Civ. Code. art. 2315(B); *Crooks v. Metro. Life Ins. Co.,* 785 So.2d 810, 812 ("[F]or the Bourgeois II holding to apply, the seven factors forming the Bourgeois I test must have converged prior to July 9, 1999.").

*Hill v. Exxon Mobil Corp.*, 2012 WL 359322, at *2 (E.D. La. Feb. 2, 2012) (Vance, J.) (continuing on to grant motion to dismiss for failure to address *Bourgeois I* factors and failing to allege a "manifest injury or disease").

Here, Plaintiff's Petition does not meaningfully address the *Bourgeois I* factors or whether they "converged" before July 9, 1999. The relevant questions, therefore, are (1) whether Plaintiff has alleged a "manifest physical . . . injury or disease"; and (2) if he has done so, whether he must also expressly address the *Bourgeois I* factors at the pleading stage.

Neither party has provided the Court with a clear definition of "manifest physical . . . injury or disease" to use in interpreting article 2315, but, especially given the relatively light burden faced by Plaintiff at this stage, the Court believes that Plaintiff's allegations, while not lengthy or very

9

detailed, suffice. *See* DISEASE, Black's Law Dictionary (10th ed. 2014) ("A deviation from the healthy and normal functioning of the body . . . ; any disorder; any depraved condition").

The next question is the extent to which Plaintiff must address the *Bourgeois I* factors at the pleading stage. Having pled a manifest physical injury or disease, it is unclear whether he must do so at all. Some of the Louisiana Supreme Court's statements in *Bourgeois I* were phrased broadly. *See, e.g., Bourgeois I*, 716 So.2d at 360 ("[W]e are persuaded that the reasonable cost of medical monitoring is a compensable item of damage under Civil Code article 2315, provided that a plaintiff satisfies the following criteria[.]"). Also, it appears that Louisiana juries are still instructed to apply the *Bourgeois I* factors in a "limited number of cases" following the partial abrogation of *Bourgeois I*. 18 La. Civ. L. Treatise, Civil Jury Instructions § 18:19 (3d ed.)

However, in laying out the *Bourgeois I* factors, the court, of course, had no opportunity to consider the interplay between these factors and the limiting language of the subsequent amendment to article 2315 passed in response to *Bourgeois I*. Moreover, the "narrow issue" in *Bourgeois I* was whether "asymptomatic plaintiffs," who had had significant occupational exposure to asbestos and were required to bear the expense of periodic medical examinations to monitor the effects of that exposure, had suffered damage under article 2315. *Id.* at 357. The Louisiana Supreme Court addressed the (ultimately "unwarranted") fear that, "without an identifiable physical injury upon which to moor a claim for medical expenses, an atmosphere of unlimited and unpredictable liability [would] ensue." *Id.* at 358. The court also discussed other cases in which states had authorized recovery for medical monitoring "in the absence of physical injury." *Id.* at 359-60. The court ultimately held that "a plaintiff who can demonstrate a need for medical monitoring has suffered damage in the form of the costs required to pay for this care." *Id.* at 361. Therefore, the scope of *Bourgeois I*, and the extent to which article 2315 should supplement

or supplant it, is ambiguous. Subsequent cases are similarly vague, although many seem to suggest that the article 2315 test is independent of the *Bourgeois I* factors. *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2008 WL 5217594, at *18-*20 (E.D. La. Dec. 12, 2008) (plaintiffs alleged that they had suffered physical injuries from formaldehyde exposure but did not describe them, arguing that the issue could not be properly litigated on motion to dismiss; court did not discuss *Bourgeois I* factors in finding that plaintiffs' allegations of manifest injury were sufficient to support medical monitoring claim); *Royal v. Exxon Mobil Corp.*, 2012 WL 380305, at *1 (E.D. La. Feb. 6, 2012) (in case alleging exposure to radioactive scale, "[t]he fact that [the plaintiff] may have been exposed to radiation [was] not, *in and of itself*, sufficient [to support medical monitoring award]"(emphasis added)); *Hill*, 2012 WL 359322, at *2 (stating that plaintiff's claims failed under "*either* the current article 2315 test or the *Bourgeois I* test" (emphasis added)).

Relatedly, a medical monitoring claim will likely ultimately require *proof* of several of the facts underlying the *Bourgeois I* factors. *See, e.g.*, *Woods v. Reynolds Indus. Contractors, Inc.*, 2010 WL 1286438, at *4 (W.D. La. Mar. 30, 2010) (no support for medical monitoring award following trial where, although plaintiff suffered "occasional nosebleeds" after exposure to asbestos, physician had not found any "causal connection" between the nosebleeds and the exposure, plaintiff had not been "diagnosed with any asbestos related disease," and physician had recommended "nothing more than regular physical examinations"). However, this says little about how specifically they must be pled at the outset of a case to satisfy Rule 12(b)(6), particularly where Plaintiff alleges, if imprecisely, some manifest physical injury. *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 2008 WL 5217594, at *20; *see also Diamond Servs. Corp.,* 2011 WL 938785, at *3 (facts permitting the court to draw "reasonable inference" of liability need not

be "detailed or specific," and the relevant standards permit that discovery may be necessary to support an element of a claim). Under these standards, the Court cannot conclude that Defendants have shown that they are entitled to dismissal of Plaintiff's medical monitoring claim. Defendants' request is therefore denied.

V.　　CONCLUSION

For the foregoing reasons, the Motion (Doc. 12) is GRANTED, upon the parties' agreement, with respect to Plaintiff's claims against Shell Offshore and SWEPI that predate these entities' incorporation and formation. The Motion is DENIED in all other respects.

Signed in Baton Rouge, Louisiana, on April 23, 2018.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**